We'll now move to Appeal 24-2239, United States v. Zachary Barnes, and we'll begin with oral argument on behalf of the appellant. Ms. Cruz, we'll start with you. May it please the Court, my name is Alessandra Cruz and I represent Appellant Zachary Barnes as supervised by Professor Robert Palmer of Notre Dame Law School. Your Honor, the central issue in this case is whether Barnes was a supervisor of Codefendant Marquis Neal for purposes of the sentencing guidelines. It was this determination that led the lower court to find that he was ineligible for safety valve relief, and it is this issue that we focus on here today. If we prevail on the role enhancement issue, we further argue that Barnes did not possess a firearm in connection with his offense, and therefore, he should be eligible for safety valve relief. Mr. Palmer Can I pause you at the outset real quick? Ms. Cruz Absolutely. Mr. Palmer And I don't mean to interrupt you, I just want to clarify what it is that is before us. I totally get the 3B1.1, organizer, leader, supervisor, two-level enhancement. I got that part. Are you separately and independently appealing the 2D1.1 firearm enhancement, or are you appealing it simply for, or are you injecting that into this appeal for purposes of making a point about safety valve relief? Ms. Cruz To make the point about safety valve relief and why it wasn't harmless error for the court to have ruled incorrectly on the first issue,  Mr. Palmer Was there a separate and freestanding challenge in the district court to the 2D1.1 firearm enhancement? Ms. Cruz Not to the firearm enhancement, Your Honor. Yes, to the safety valve question, but only as to the enhancement for the role. Mr. Palmer Okay. Sorry to interrupt you. Ms. Cruz No, absolutely. Thank you, Your Honor. So, to turn back to the role enhancement issue, the lower court erred in finding that Barnes was a supervisor for two reasons. First, it relied on inconsistent and unreliable testimony when making that determination. And second, even if Neal's testimony was appropriately considered, Barnes' described conduct does not rise to the level sufficient to make him a supervisor. Mr. Palmer Ms. Cruz, one reason that the district court found Neal credible was because it would be highly unlikely that Neal would know where to go and what to do without Barnes' directions, given that Barnes was the only one communicating with the CI. Why shouldn't we affirm the district court's credibility finding on that basis? There'd be no other reason to know where to go or what to do but for that relationship. Ms. Cruz Well, first, Your Honor, Neal gave his phone number to the informant on two, if not three, occasions. So, the phone was actually never taken to confirm. It was only based on his testimony that it was seen that he did not discuss things with the informant directly. However, I believe that even if Barnes was the main person who was handling coordination as far as the logistics of where to meet with the informant, there were still many other activities that Neal was involved in. He was still present at meetings. He was still saying that he could provide fentanyl. He was still culpable and therefore, under this common sense inquiry of 3B1.1, Barnes should not be seen as more culpable than Neal, Your Honor. So, to turn back to that point of control, here it's clear that Barnes did not exercise control over Neal. To start, Neal had a tremendous amount of involvement in the enterprise. He wasn't just an errand boy who answered Barnes' demands. As I mentioned before, he was involved in closed-door meetings. For example, on the controlled by on October 18th, the informant met with both Barnes and Neal in Barnes' vehicle. Neal provided his phone number at that time and Barnes introduced him. The informant stated during debriefing that Neal said he could provide marijuana, guns, and fentanyl. And keep in mind, he said all of this while Barnes was present. This court has held that involvement in closed-door meetings like this can signal someone has higher leadership. Further, during testimony, Neal stated that he condemned the suppliers at times, even stating that he was with them at moments. He noted that he went to high school with these individuals. This sort of understanding of the enterprise as a whole and its extension shows that he had knowledge that was beyond just delivery. Second, Barnes did not appear to be using Neal as a cover in this situation, which is a posture that's common in relationships of control. He was present at almost all of the transactions, and he even did transactions where Neal was not present at all. Neal was asked about this directly in the testimony, that's on page 21 and 22, if Neal would go alone most of the time, and he said, quote, we would work together most of the time. Third, and I think most... As to the sales that they worked together on, don't you have to keep circling back to Judge Brennan's question that when they were working together, Mr. Neal was taking direction from Mr. Barnes as to, go do this sale with this guy, take this gun with you this time. Your Honor, I would disagree with that characterization. I think that characterization comes from Neal directly in his testimony, and that's kind of how that framework came to be. But I actually don't think that Barnes saw Neal in that way, and I think that's seen by Barnes' endorsement of Neal's own leadership here. For example, Barnes was the one who allowed Neal to give his phone number. When the informant asked, can I talk to Neal directly, Barnes did not stop her from doing that. During the October 17th fi, the informant reached out to Barnes beforehand and said, I would like to discuss fentanyl, should I do that with you or Barnes? And at that point, Barnes said, Neal will be there, you can talk to him about it. And so I think if you see this relationship where Barnes is controlling, say, just do that, he would have taken control in that situation. I think that's especially clear here because originally this informant had a relationship with someone else, and Barnes was able to kind of build a relationship with him by giving the phone number, by taking leadership there, and so he understood the ramifications of having Neal have more contact. Further, by having more contact with the informant, Neal was making on-the-spot decisions here. He was having to answer questions that put him in a space of control as well. To point to some other examples of his leadership... If it was equal, why was Neal getting paid in marijuana? Your Honor, so Neal mentioned during his testimony that he smoked marijuana often. In fact, he said that he smoked every single day and would often, even when they weren't engaging in this business, would buy from Barnes. And so I think there's a potential here that Neal simply had different goals in this enterprise. He was looking to get drugs when Barnes may have been looking to get money. Your Honors, additionally, these same facts that I'm pointing to, if we don't want to focus on control here, I think can be seen in other factors that the sentencing guidelines point to. For example, Neal was involved in meetings, as I mentioned, which points to a higher degree of participation on his point. It also shows to more about his nature of participation. Further, sharing his number once again put him in this position where he had to be able to answer questions on the fly. But Your Honors, to get to a larger picture here, 3B1.1 is about culpability. And here, Barnes was not more culpable than Neal. Rather, the evidence shows, when looked at as a whole, that Neal had a tremendous amount of autonomy. He had an understanding of the main players here. He took initiative with the criminal enterprise and with the informant. At one time, when Barnes was already in jail, Neal actually went to go get a firearm and to continue this action without him present. And so I think under these circumstances, the supervisor enhancement is inappropriate. So for those reasons, we ask this court to remand for resentencing. And unless there are further questions, I'd like to reserve the rest of my time for rebuttal. Thank you, Ms. Cruz. That will be granted. Thank you. Mr. Whalen, we'll move to you on behalf of the appellate. May it please the Court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. Mr. Neal provided testimony that filled in the gaps of what the evidence showed that was neither contrary to laws of nature nor physically impossible. And so the district court did not clearly err in crediting his testimony. Once you accept his facts, this case falls right within this court's case law about what an organizer-leader manager is. And Mr. Barnes appropriately was given the organizer-leader enhancement and therefore denied safety valve relief. Judge Scudder, I guess let me quickly address the question you're asking. There was no challenge to the 2D1.1 enhancement. I don't think, though, that that's dispositive of the safety valve issue under this court's case law in Bingham. There's a difference between the possession and furtherance of and the possession and with enhancement. And as I understand the defendant's argument to be that, yes, Mr. Barnes might have had a gun, but it wasn't in connection with the drug trafficking offense. And so we think that is wrong under the facts as we argued in our brief. So I know this isn't your position. So suppose we agree with Ms. Cruz on the 3B1.1 issue. Yeah. And so that's off the table for purposes of sentencing valve. Is it your view that this court should then take up the gun issue? We argue at the end of our brief that this court could take up the gun issue because we think the facts support the enhancement, not the enhancement, the disqualification of safety valve. The district court admittedly didn't make that finding. Chief Judge Brady skipped over that question because she found that Mr. Barnes was an organizer-leader. Yeah. Is this the case to do it then? Your Honor. She hasn't made a finding? Yeah. No, I understand the court's point. The court might not be inclined to find that particular factual issue. We think the facts and the law are there to find it if this court wants to. We understand also that the court usually doesn't make factual findings. Regardless of whether this court, even if this court found in favor of the defendant on that issue though, there's still the fact that he hasn't proffered. So he can't get safety valve relief by this court under any circumstances. So if this court disagrees with us and finds there's clear error, it should, he's still not eligible for safety valve under any circumstances. But we don't think there was a clear error in the court's believing of Mr. Neal. As Judge Brennan noted, there's the fact that Mr. Barnes objectively is coordinating all these transactions with the CS and the text messages. He's setting the date. He's setting the time. He's setting the quantity. He's setting the prices. He and he alone is interacting with a confidential source. The videos and the officer's observations show that it's in fact Neal who's physically handing over the drugs. And, you know, I don't think it's right to say that Mr. Barnes didn't use Neal as a cover. Yes, Barnes might have been hanging around the periphery of some of these transactions, but he's still not directly involved in most of these transactions. There's the one in the car where he's there with Mr. Neal and the CS comes in. So the both of them are there. But in most of them, Barnes is off in a sporting goods store or he's at his house. And in each instance, Neal either leaves Barnes' house for the drug transaction or he goes back to Barnes' house for the drug transaction. So Barnes is still involved. He's just having Neal actually do the delivery for him. Under this court's case law, that is a manager, organizer, leader pretty consistently. Judge Brennan, I apologize. He's also, he is paying Neal in marijuana. Barnes recruited Neal to this particular conspiracy. That's what Neal testified to. That's what Chief Judge Brady found. That finding isn't clearly erroneous either. So if you take the facts that we have Neal's testimony that's consistent with all the other evidence in this case, that Chief Judge Brady found was credible, that she found supported the organizer-leader enhancement, we think this court should affirm the sentence. Is there anything in the record that speaks to Barnes wanting Neal to be the one in direct jeopardy and him being in indirect jeopardy? I don't think, there's no explicit statement by Neal that, you know, Barnes told me that he's using me as the fall guy. I think that's a reasonable inference based on the fact that it's Barnes coordinating these deals and he's sending Neal on his behalf. You know, he's the one, there's the one deal I guess where Barnes arranges it and Neal said, Neal delivers the drugs, confidential informant says, I thought you were going to come. I wanted to talk to you about a pistol. And as I recall the text messages, Barnes says, no, I sent my guy instead. So there is the text, you know, supporting that inference. There's no explicit statement by Barnes or Neal though. Thank you. Unless this court has any further questions, we would ask that you affirm the sentence. Thank you, Mr. Whalen. Thank you. Ms. Cruz, we'll go back to you now for rebuttal argument. May I proceed? Yes. So just to start with the firearm issue to clarify there, I don't believe that this court should determine the safety valve issue solely on the firearm basis here considering that it wasn't looked at in the first instance in the lower court. This court has recently held in United States v. SAMHSA safety valve eligibility is incredibly fact determinate and so I believe that that kind of general principle should apply here. Your Honors, turning to the role enhancement issue, the government describes the conduct that took place here in straightforward terms. Barnes did all of the organizing while Neal simply showed up and handled the drugs and the money in the last instance. This is not the reality of what their relationship was like. The record when looked at as a whole shows Neal had much more involvement. The government says that he, pointing to Barnes, and he alone was discussing with the informant but that simply wasn't true. During the February 17th controlled by, Neal directly was speaking to the informant about what Barnes could not get. He said that Barnes was unable to get a firearm in that instance but that he would talk to his friend and would make that happen. During that same controlled by, the informant stated that she was having legal troubles and was just discussing more generally with Neal showing that they had a relationship themselves but also I think Neal's response there was telling. He said, I'll take care of you. So this simple framework of Barnes having all the orchestration, having all the relationship doesn't do justice to Neal's role and his involvement. As I mentioned, he also was involved in meetings. He had that initiative and he knew some of the main players here. Your Honor, the 3B1.1 analysis is about culpability at its heart and here Barnes is not more culpable than Neal. For the foregoing reasons, we ask this court to remand this case for resentencing, instructing the lower court to remove the role enhancement and make Barnes eligible for safety valve relief. Thank you Ms. Cruz. You have the thanks of the court as well as thanks to Mr. Palmer for the involvement in the case and the representation on behalf of Mr. Barnes. Thank you as well Mr. Whalen for your representation and the case will be taken into revision.